## Commonwealth v. Foster

*William J. MacCarter*, district attorney, and *Louis A. Bloom*, assistant district attorney, for Commonwealth.

*Mervyn R. Turk*, for defendant.

MacDade, J., July 3, 1931.—This defendant, James Foster, is seeking a parole. His petition is in due form and all the requisites necessary have been complied with in order to get his prayer for clemency before the court.

He is incarcerated in our county jail because he pleaded guilty to embracery and bribery of jurors under section forty-eight of the Act of March 31, 1860, P. L. 382, and was duly sentenced therefor (Broomall, J., and MacDade, J.) to pay a fine of $100 and costs and undergo imprisonment for a period of not less than six months nor more than one year. The sentence was imposed April 2, 1931, at which time one Walter Harris, alias "Butch" Harris, was sentenced for a similar offense.

Prior to this period, this defendant, after hearing before the court in banc, being presented by A. B. Geary, Esq., and George T. Butler, Esq., amici curiæ, was declared guilty of contempt of court upon the same state of facts upon which the indictment herein was based for embracery and bribery of jurors. The court (Fronefield, P. J.) fined him for contempt in the sum of $500, which was paid at the bar of the court.

The alleged jury tampering occurred in the term of our quarter sessions when a number of persons were charged with conspiracy, bribery, extortion, violating the prohibition laws, setting up bawdy houses and gaming, and many, including Edward Robinson, Samuel Scott, D. Harvey Sykes, William Falls, the Holdens, Edward Connolly, all constables, and jurors and others, were approached for the purpose of obstructing justice. A special investigation was ordered by the court, and Fronefield, P. J., sat and heard the witnesses, with the above determination.

The matter immediately before us for consideration is the petition for parole, alleged to be signed by hundreds of citizens of this county, who declare over their signatures that they believe that it is for the best interest of the community that he be released from prison and urge us to release him.

The defendant's reasons for a release are:

1. That on April 2, 1931, he pleaded guilty generally to the above charges before Hon. Albert Dutton MacDade, and was sentenced to pay a fine of $100 and the costs of prosecution and undergo imprisonment in the county jail for a period of six months to one year on the charge of bribery. Sentence was suspended on the charge of conspiracy.

2. That he is now, and has been since the sentence, incarcerated in the Delaware County Prison, at Media, Delaware County, Pennsylvania.

3. That he, on March 6, 1931, was adjudged guilty of contempt, upon the same circumstances, and for the same offenses for which he pleaded guilty on April 2, 1931, and on the said contempt charge he paid a fine of $500.

4. That he has never been in any trouble before and has borne a splendid reputation in the community of Marcus Hook for many years, having been employed at the Viscose Company, of Marcus Hook, for seventeen years.

5. That he is married and supports his wife and two children, with whom he makes his home.

6. That he was a soldier in the United States Army and served overseas during the late war.

7. That if he is paroled he can return to his former job at the Viscose Company, Marcus Hook, as per letter attached hereto. [This is an error. He can get employment at the American Restaurant, Marcus Hook, Pa., Mills Bros., Prop.]

8. That he has already been severely punished and realizes the enormity of his offenses, and if released on parole he will never again violate any law.

Communication to a jury or any of its members in relation to matters which are or may be proper for their inquiry, either on questions of law or fact, is not excusable under any circumstances, and if made in an attempt to influence their action, is criminal, a contempt of court and an obstruction of justice.

Jurors are officials of the court, under its legal direction, receive their instructions from it only and are entitled to its protection from all attempts to control, influence or bias them. Therefore, this defendant has, by his admission of guilt, committed a very serious offense against the tribunal of justice in his misguided zeal to aid a friend who was a candidate for prosecution for criminal offenses and to be tried before the panel of jurors, of whom several were approached by this defendant.

Our attitude in the present case in meting out the punishment we did was clearly and well defined in the words of Yerkes, P. J., in Done's Estate, 5 Dist. R. 211, wherein it was held to be the duty of the judge to enforce the contempt proceedings, either by summary punishment or by binding the defendant over to answer an indictment.

It is the court's duty to support the dignity of its station and uphold the law so that it shall not be infringed in the respect in which it was in the instant case: Miehle's Case, 10 D. & C. 558; Joulwan's Case, 2 D. & C. 188; Guarantee T. & S. D. Co. *v.* Heidenrich et al., 5 D. & C. 184, 186; Com. *v.* Crans, 2 Clark 172; Welsh Contempt Proceedings, 19 Del. Co. R. 280.

Under the above authorities, is there any room for discussion of the averments of the petition for parole? Is not this man a menace to society, and if his dishonest endeavor to influence corruptly a juror had been brought to a successful fruition and such practices continued, then we could write over the lintels of the temple of justice: "There is no justice here." Is there an extenuating circumstance by which we can extend the hand of clemency to this cringing creature before the bar of justice pleading for mercy when he endeavored to pollute the source from which mercy is expected to be shown? What an anomalous situation! However, we must not be cruel but extend mercy, if it be possible, in the spirit in which our parole acts were enacted into law in response to the wishes of the populace, whose representatives make the laws it is our sworn duty to enforce.

After full investigation and hearing upon this petition, including the recommendation of Messrs. Geary and Butler, amici curiæ, for parole, as per testimony attached hereto and made part hereof, the court is of the opinion that the said defendant, James Foster, is entitled to be paroled at this time, but it is not meant by paroling this defendant to soften his sentence or to any extent to be regarded as a let-down of society's barriers against crime.

As was said in Com. *v.* Allen, 19 Del. Co. R. 117: The ultimate success or failure of our penal system, it is said, is determined by the conditions under which the released prisoner, in each instance, reënters the free world.

This release may be through a complete discharge at the completion of a prisoner's full sentence or through a provisional release, known as parole, which presupposes a degree of watchfulness on the part of the authorities which will safeguard the public until the day of full release arrives.

Perhaps the most general misconception on the part of the public in regard to the function of parole is that it is essentially a softening of sentence and to that extent a let-down of society's barriers against crime. As a matter of fact, it is an extension of sentence beyond the prison walls and—if properly exercised—should be one of the community's best safeguards. It provides an alternative to complete discharge and often to pardon, whereby an offender is completely lost sight of at the very moment he is set free in the community.

Under our laws there are two systems of parole, depending upon whether release is from a county or a state prison. In the former instance, as in the instant case, the committing judge may order release on parole at any time.

In the exercise of our parole authority at this time we have considered two elements: first, a test of eligibility for release that will pass only the fit and hold the unfit; and, second, a system of supervision which will impress the defendant with his continued responsibility for his actions, and, incidentally, protect the community as well as the prosecutor from a recourse to crime on his part.

Believing that the defendant is fit and that he is anxious in every way to make amends for the crime which he has committed, we propose in the exercise of our parole authority to return him to society and that the public will be safeguarded in so doing.

We are also taking into consideration that (1) this defendant is suffering double punishment, perhaps, and by reference to our procedure in Welsh Contempt Proceedings, 19 Del. Co. R. 280, it would seem that he is serving a

sentence under an indictment as well as having made amends in the contempt proceedings; that he, therefore, has been sufficiently punished; that (2) he has never been a violator of the law heretofore and has borne a splendid reputation; that (3) he has employment if released, whereby he may obtain sufficient remuneration to properly support his family, consisting of a wife and two small children, whose appearances typify the ideal American family, and (4) finally, his services to his country as a soldier in the United States Army, serving overseas during the World War.

Therefore, holding to the above view, we make the following order: And now, July 3, 1931, upon hearing of the above petition before the court in banc (Broomall, J., and MacDade, J.), but in which order of parole Fronefield, P. J., concurs, after due consideration thereof, the court doth order and decree that if the said James Foster will pay the fine and costs imposed in the several prosecutions against him, then and in such case the defendant may be paroled for a period of five years, and to give his own recognizance in the sum of $500 to keep the peace and be of good behavior during said period of parole and to appear before this court when required.

From William R. Toal, Media, Pa.